1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   KULDIP S. KLER,                        No. CIV S-06-1919-FCD-CMK-P

12             Petitioner,

13        vs.                               <u>ORDER</u>

14   BOARD OF PRISON TERMS,
     et al.,

15
               Respondents.
16
     _____/
17

18             Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole in 2005.  Pending

20   before the court is petitioner's petition for a writ of habeas corpus (Doc. 1).

21

22                                **I.  BACKGROUND**

23             Petitioner is serving an indeterminate sentence of 15 years to life following a 1989

24   conviction for second degree murder.  At the time sentence was imposed on June 11, 1991,

25   petitioner was credited 423 days time served.  Petitioner appeared before the Board of Parole

26   Hearings ("Board") for a subsequent parole suitability hearing on June 22, 2005.  It is unclear

1

1   whether petitioner had more than one prior parole hearing.  The Board denied parole for two

2   years, stating that "[t]he most important reason for the denial is the commitment offense which

3   was the murder of Simron Kler, the inmate's 10-month-old daughter. . . ."  The Board added:

> . . .[The victim] was just a mere child, an infant.  And the crime
> was carried out in an especially cruel fashion, this child was beaten to
> death, the various courts indicate over 100 different areas showing
> bruising, contusions, that she had broken ribs, and unfortunately the
> injuries that were noted, primarily were new, but the results also show that
> she had prior abuse.  And prior broken ribs.  Or ribs that were apparently
> in the process of healing.  The motive for this crime is completely
> inexplicable, the inmate says that he lost control, that he was angry at the
> time that she disturbed his sleep.  But this young girl lost her life for no
> reason, other than the fact that the inmate was overly ambitious and
> obviously self-centered and did not have any care for his daughter. . . .

10  The Board also cited the following other reasons for denying parole: (1) failure to participate in

11  sufficient self-help programming while in prison; (2) opposition from the Alameda County

12  District Attorney's Office; and (3) lack of suitable parole plans in India.[1]  The Board noted that a

13  February 2005 psychological evaluation was "supportive of release" because the doctor opined

14  that petitioner was a "lower than average risk for future violence compared to other men his age."

15  The Board commented that this was "such a statement as . . . once someone has committed a

16  violent crime, they are always going to be a higher risk than the average citizen."  The Board also

17  noted that petitioner had been "disciplinary free" since his last parole hearing.

18          As to self-help in particular, the Board added:

> . . . The panel finds that the inmate needs additional self-help in
> order to further delve into the causative factors for his participation in the
> life crime.  And until further progress is made, he continues to be
> unpredictable and potential threat to others. . . .  When it [programming]
> becomes available to you, [we recommend] that you participate in self-
> help. . . .  You have many things to be commended for, there is absolutely
> no question that you are an exceptionally well programming inmate.  That

---

[1]      Petitioner states that he is not a citizen, but was a green card holder at the time of his incarceration.  Apparently, given his felony conviction, he is subject to removal.  The Board noted an "INS hold" and, for this reason, required suitable parole plans in India.  The Board did note, however, that petitioner had suitable plans in California because "he can live with his wife in Roseville and has a job offer in nearby Rocklin" and petitioner "also has marketable skill, having completed auto body and fender."

1
2
3
4
5
6

> you have completed auto mechanics, body and fender, prior to
> incarceration you were a college graduate.  You are to be commended that
> you only have two 115's [disciplinary charges] during the course of your
> incarceration and that you have been very busy in self-help programs, most
> recently, bible courses; the FEMA or Emergency Management Institute
> courses; parenting; conflict resolution; anger management and many others
> that you have obviously a good wor[k] ethic because you have received
> laudatory chronos for your work, for your contributions.  But these
> positive aspects of your behavior just do not yet outweigh the factors of
> unsuitability. . . .

7   The Board commented that, while petitioner has taken responsibility for his crime and the effect

8   it has had on his family, but stated: "I'm not sure you really take full responsibility for everything

9   you did to this child prior to her death."

10          Petitioner filed a petition for a writ of habeas corpus in the Alameda County

11  Superior Court challenging the 2005 denial of parole.  In denying relief, the state court

12  concluded:

13
14
15
16
17
18
19
20
21

> . . . The Petition fails to state a prima facie case for relief.  Even though
> Petitioner has submitted numerous documents in support of his Petition,
> review of the transcripts provided and documents pertaining to the June
> 22, 2005, hearing indicate that there was no abuse of discretion by the
> Board of Prison Terms.  The factual basis of the BPT's decision granting
> or denying parole is subject to a limited judicial review.  A Court may
> inquire only whether some evidence in the record before the BPT supports
> the decision to deny parole.  The nature of the offense alone can be
> sufficient to deny parole .  (In re Rosenkrantz (2002) 29 Cal.4th 615, 652,
> 682).  The record presented to this Court for review demonstrates that
> there was certainly some evidence including, but not limited to the
> committing offense, Petitioner's lack of acceptable parole plans should he
> be deported to India, and the BPT's finding that Petitioner should
> participate in additional self-help programming to enhance Petitioner's
> ability to realistically understand his role and responsibility in abuse of his
> daughter.  There is nothing in the record that indicates that the Board's
> decision was arbitrary or capricious. . . .

22  The California Court of Appeal denied relief without comment or citation, as did the California

23  Supreme Court.

24  / / /

25  / / /

26  / / /

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

1    under § 2254(d), federal habeas relief is available only where the state court's decision is

2    "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

3    standards, "clearly established law" means those holdings of the United States Supreme Court as

4    of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

5    (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

6    the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

7    banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

8    relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

9    753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

10   For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

11   to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

12   state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

13   contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

14   created by state conduct at trial because the Court had never applied the test to spectators'

15   conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

16   holdings.  See Carey, 549 U.S. at 74.

17           In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

18   majority of the Court), the United States Supreme Court explained these different standards.  A

19   state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

20   the Supreme Court on the same question of law, or if the state court decides the case differently

21   than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

22   court decision is also "contrary to" established law if it applies a rule which contradicts the

23   governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

24   that Supreme Court precedent requires a contrary outcome because the state court applied the

25   wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

26   Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

1    id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

2    determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

3    1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

4    case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

5    is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

6            State court decisions are reviewed under the far more deferential "unreasonable

7    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

8    unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

9    510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

10   that federal habeas relief may be available under this standard where the state court either

11   unreasonably extends a legal principle to a new context where it should not apply, or

12   unreasonably refuses to extend that principle to a new context where it should apply.  See

13   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

14   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

15   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

16   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

17   even where the federal habeas court concludes that the state court decision is clearly erroneous.

18   See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

19   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

20   As with state court decisions which are "contrary to" established federal law, where a state court

21   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

22   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

23           The "unreasonable application of" standard also applies where the state court

24   denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

25   848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions

26   are considered adjudications on the merits and are, therefore, entitled to deference under the

1    AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

2    The federal habeas court assumes that state court applied the correct law and analyzes whether

3    the state court's summary denial was based on an objectively unreasonable application of that

4    law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

5

6                                    **III.  DISCUSSION**

7            Petitioner claims that the Board failed to consider all the suitability factors

8    required under state law.  He also argues that the Board's continued reliance on the facts of the

9    commitment offense deprived him of due process.   Respondents argue that, in the parole

10   context, due process requires only that the petitioner be given notice and an opportunity to be

11   heard, and a decision stating the reasons for denial of parole.  Respondents argue that no clearly

12   established Supreme Court precedent allows this court to apply the "some evidence" standard on

13   habeas review and conclude that, because petitioner was offered the minimum procedural

14   protections, his constitutional claim must fail.  Respondents also argue that, even if this court

15   were to apply the "some evidence" test, habeas relief is unavailable because "the state court

16   correctly found that some evidence supports the decision to deny Petitioner parole."

17           In Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit

18   held that California's parole statute does, in fact, create a federally cognizable liberty interest.

19   See id. at 1127-28.  On the merits, the court also rejected the argument that the "some evidence"

20   standard does not apply in the parole context.  See id. at 1128-29.  Under Superintendent v. Hill,

21   472 U.S. 445, 455 (1985), due process requires that a prison disciplinary hearing decision be

22   based on "some evidence" in the record as a whole which supports the decision.  This standard,

23   which the court has also applied in the parole context, is not particularly stringent and is satisfied

24   where "there is any evidence in the record that could support the conclusion reached."  Id. at 455-

25   56.  Additionally, this standard requires that the evidence underlying the Board's decision must

26   have some indicia of reliability.  See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

## A.    **Applicable Law**

In <u>Sass</u>, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> <u>Hill</u>'s some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted). <u>Hill</u> held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted). To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

<u>Sass</u>, 461 F.3d at 1129.

Because <u>Sass</u> and <u>Biggs</u> are binding precedent, this court must also conclude the "some evidence" standard is clearly established law for purposes of habeas corpus relief under AEDPA.[2] Therefore, this court will apply the "some evidence" standard on the merits. See <u>id.</u>; <u>see also</u> <u>Irons v. Carey</u>, 505 F.3946, 851 (9th Cir. 2007).

In assessing whether the "some evidence" standard has been met, the analysis is framed by the state's statutes and regulations governing parole suitability. See <u>Biggs</u>, 334 F.3d at 915. Thus, this court looks to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole and then reviews the record to determine whether there is "some

---

[2]    The court is aware of the Ninth Circuit's holding in <u>Hayward v. Marshall</u>, 512 F.3d 536 (9th Cir. 2008), <u>rehearing en banc granted</u>, 527 F.3d 797 (9th Cir. 2008), where the court applied the "some evidence" standard as clearly established law and concluded that habeas relief was granted because the continued reliance on immutable factors violated due process. However, that case is not binding precedent pending issuance of the mandate. See <u>Hayward</u>, 527 F.3d 797 ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit"). Among the issues being considered on rehearing is whether there is any clearly established law in the parole context. If the Ninth Circuit ultimately concludes that there is no clearly established law, habeas relief would be unavailable. See <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2009) (citing <u>Wright v. Van Patten</u>, 552 U.S. 120, 128 S.Ct. 743, 746 (2008)).

1   evidence" supporting the decision to deny parole.  Under California Penal Code § 3041(b) and

2   California Code of Regulations, Title 15, § 2402(a), once the inmate has served the minimum

3   term required, a release date shall be set unless release currently poses an unreasonable risk of

4   danger to society.[3]   It follows from this that, even though there may be some evidence that a

5   particular unsuitability factor exists, this does not necessarily mean that there is some evidence of

6   a current unreasonable risk of danger to the community if the inmate is released.[4]

7               In addition to concluding that due process requires "some evidence" in the parole

8   context based on <u>Hill</u>, the Ninth Circuit has addressed whether the continued reliance on

9   immutable factors satisfies this standard and whether continued reliance solely on such factors

10  ignores the goal of rehabilitation and violates due process.  In <u>Biggs</u>, where the petitioner was

11  challenging the first denial of parole based solely on the facts of the commitment offense, the

12  Ninth Circuit concluded that the denial was based on some evidence – the facts of the

13  commitment offense – even though other findings made by the Board in Biggs' case lacked

14  evidentiary support.  In dicta, however, the court acknowledged that, sometime in the future, the

15  continued reliance on immutable factors could violate due process.  <u>See</u> <u>Biggs</u>, 334 F.3d at 917.

16  From this, it is clear that the Board may rely solely on immutable factors for the first denial of

17

18        [3]      The regulations set forth various circumstances which tend to show suitability and
    others which tend to show unsuitability.  <u>See</u> Cal. Code Regs., tit 15 § 2402(c)-(d).  Under
19  § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment
    offense, where the offense was committed in an especially heinous, atrocious, or cruel manner;
20  (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others;
    (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems
21  related to the offense; and (6) serious misconduct while in prison.  Circumstances tending to
    show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with
22  others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes;
    (5) realistic plans for release; and (6) participation in institutional activities indicating an
23  enhanced ability to function within the law upon release.  <u>See</u> Cal. Code Regs., tit. 15 § 2402(d).

24        [4]      The California Supreme Court has held that, under the regulations, the denial of
    parole may be predicated on the commitment offense only where the Board can point to factors
25  beyond the minimum elements of the crime that demonstrate that, at the time of the suitability
    hearing, the inmate will present an unreasonable risk of danger to society if released.  <u>See</u> In re
26  <u>Dannenberg</u>, 34 Cal.4th 1061, 1071 (2005).

1  parole given the minimal passage of time between the commitment offense and parole decision.

2          As to subsequent denials of parole and the continued reliance on immutable

3  factors, the Ninth Circuit has not drawn any bright line.  In <u>Sass</u>, where the petitioner was

4  challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition.

5  <u>See Sass</u>, 461 F.3d at 1129.  The court did not conclude that reliance on immutable factors (the

6  facts of the commitment offense and the petitioner's prior criminal history) – even for a third

7  time – violated due process.  <u>See id.</u>  The court held:

8              In making a judgment call based on evidence of pre-conviction
            recidivism and the nature of the conviction offense, the Board cannot be
9          categorized as acting arbitrarily.  Here, the Board based its finding that
            Sass was unsuitable for parole on the gravity of his convicted offenses in
10         combination with his prior offenses.  These elements amount to some
            evidence. . . .  Consequently, the state court decisions upholding the
11         denials were neither contrary to, nor did they involve an unreasonable
            application of, clearly established Federal law as determined by the
12         Supreme Court of the United States.

13             <u>Id.</u>

14          In <u>Irons v. Carey</u>, 505 F.3d 846 (9th Cir. 2007), <u>rehearing en banc denied</u>, 505

15  F.3d 951 (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition

16  challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment

17  offense alone constituted some evidence of unsuitability under California law.  The court in <u>Irons</u>

18  noted that none of the Ninth Circuit's cases regarding reliance solely on immutable factors to

19  deny parole involved inmates who had served the minimum terms of their sentences.

20  Specifically, the court observed:

21             We note that in all the cases in which we have held that a parole
            board's decision to deem a prisoner unsuitable for parole solely on the
22         basis of his commitment offense comports with due process, the decision
            was made before the inmate had served the minimum number of years
23         required by his sentence.  Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the
            petitioners had not served the minimum number of years to which they had
24         been sentenced at the time of the challenged parole denial by the Board.
            <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases
25         and all we hold today, therefore, is that, given the particular circumstances
            of the offenses in these cases, due process was not violated when these
26         prisoners were deemed unsuitable for parole prior to the expiration of their

1  minimum terms.

2  Id. at 853-54.

3  As to the continued reliance solely on immutable factors, the court noted in dicta:

4      Furthermore, we note that in Sass and in the case before us there
  was substantial evidence in the record demonstrating rehabilitation.  In
5  both cases, the California Board of Prison Terms appeared to give little or
  no weight to this evidence in reaching its conclusion that Sass and Irons
6  presently constituted a danger to society and thus were unsuitable for
  parole.  We hope that the Board will come to recognize that in some cases,
7  indefinite detention based solely on an inmate's commitment offense,
  regardless of the extent of his rehabilitation, will at some point violate due
8  process, given the liberty interest in parole that flows from the relevant
  California statutes.

9  Id. at 854.

10

11      From Biggs, Sass, and Irons the court can conclude that, where the challenged

12  parole denial occurs before the petitioner has served the minimum term of his sentence, the

13  continued reliance solely on immutable factors to deny parole for up to eight times does not

14  violate due process.  It may be that, so long as the inmate has not served his minimum sentence,

15  the Board may deny parole any number of times based solely on immutable factors.[5]  Where the

16  inmate has served the minimum term, the following rules apply:  (1) California law creates a

17  liberty interest in parole for prisoners who have served the minimum sentence, see Sass, 461 F.3d

18  at 1127-28; Irons, 505 F.3d at 853-54; (2) the Board's decision to deny parole must be supported

19  by  "some evidence" that the prisoner's release would have posed an unreasonable risk of danger

20  to the community at the time, see Sass, 461 F.3d at 1128-29; and (3) the evidence relied upon by

21  the Board must have some indicia of reliability, see Biggs, 334 F.3d at 915.  In some cases where

22  the minimum term has been served, the continued reliance on immutable factors to deny parole

23  may violate due process.  See id. at 917; see also Irons, 505 F.3d at 854.

24

25      [5]    Such a reading of the cases would be consistent with California law, which does
26  not require that a parole release date even be considered until the inmate has served the minimum
term of his sentence.  See Cal. Penal Code § 3041(b) and Cal. Code of Regs., Title 15, § 2402(a).

11

1    **B.    Analysis**

2        In this case, petitioner was convicted in 1991 and sentenced to serve a minimum

3    of 15 years in prison.  Given that the denial challenge in this case occurred in 2005, it is not clear

4    that petitioner had served his minimum term, in which case the state court could not have erred in

5    affirming the Board's denial of parole.

6        Assuming for the moment, however, that petitioner had served his minimum term

7    by virtue of application of 423 days time served at the time of sentencing, the court finds that

8    habeas relief is still unavailable.  Initially, the court notes that it must apply the "some evidence"

9    standard in analyzing the state court's decision to affirm the Board's denial of parole.

10   Notwithstanding respondents' compelling argument that no clearly established United States

11   Supreme Court authority exists applying this standard in the parole context, this court is bound to

12   follow the existing Ninth Circuit precedent, namely Biggs, Sass, and Irons, all of which applied

13   the "some evidence" standard in parole cases.

14       Applying the "some evidence" standard to the facts of this case, the court finds

15   that some evidence, which was reliable and relevant to the issue of petitioner's danger to the

16   community if released in 2005, supports the Board's decision to deny parole.    In particular, as

17   the Board noted, petitioner had not participated in self-help programming to the point where he

18   accepted responsibility for the abuse of his daughter.  While the court accepts the Board's finding

19   that petitioner has accepted responsibility for his crime, this is not the same as accepting

20   responsibility for the child abuse which preceded and no doubt played a part in the crime itself.

21   Neither the Board nor the state court erred in concluding that this constituted some evidence of a

22   risk of danger to society.

23       In addition, the court notes petitioner's lack of suitable plans for release upon

24   removal to India.  While petitioner will no doubt argue that he had adequate plans for release in

25   California, the court finds nothing in the applicable regulations which limits the Board's

26   consideration to the risk of danger to the local community.  In other words, the Board was free

12

1   (and by all rights had a duty) to consider the danger petitioner's release would pose to the

2   community in which he would likely live given the INS hold – India.  It is undisputed that

3   petitioner had no living arrangements or offers of employment in India.  This alone also

4   constitutes some evidence to support the Board's denial of parole.

5

6                           **IV.  CONCLUSION**

7                  Based on the foregoing, the undersigned recommends that petitioner's petition for

8   a writ of habeas corpus (Doc. 1) be denied and that respondents' request to stay these

9   proceedings pending issuance of the mandate in <u>Hayward</u> be denied as unnecessary.

10                 These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

14  Findings and Recommendations."  Failure to file objections within the specified time may waive

15  the right to appeal.  <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16

17   DATED: August 20, 2009

18

19                                    **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26